John L. PIERCE, Plaintiff in Error,

v.

The OTIS ELEVATOR COMPANY, a Corporation, et al., Defendants in Error.

No. 37914.

Supreme Court of Oklahoma.

Oct. 28, 1958.

Norman Barker, Tulsa, for plaintiff in error.

Byron V. Boone, Rucker, Tabor & Cox, by Joseph A. Sharp, Tulsa, for defendants in error Westinghouse Electric Corp., Otis Elevator Co. and Bill Cox.

Houston, Klein & Davidson, by Edward L. Jacoby, Tulsa, for defendants in error Tulsa Elevator Co., Ben G. Sweet, Sr., and Ben G. Sweet, Jr.

Dyer, Powers & Gotcher, by William K. Powers, Tulsa, for defendant in error Local No. 83, International Union of Elevator Constructors.

WELCH, Chief Justice.

John L. Pierce filed this action in the District Court of Tulsa County, Oklahoma, against The Otis Elevator Company, a corporation, and others. All of the defendants filed motions to quash and plea to the jurisdiction, said motions being based upon the theory that exclusive jurisdiction of plaintiff's cause of action was by federal statute vested in the National Labor Relations Board. The District Court sustained the motions of the defendants, from which order this plaintiff has appealed.

The petition of the plaintiff alleges that the defendants, some of which are foreign corporations, are licensed to do business within the State of Oklahoma; some of the defendants are residents of this state; that plaintiff is a resident of this state; that the defendants, during the period referred to, have been jointly and constructively engaged in the erection, installation, building, maintaining, repairing and servicing elevators within the City of Tulsa, and cities in adjoining territory within the State of Oklahoma; that the defendants for the purpose of preventing the said plaintiff from engaging in or securing employment through them, or other employment of similar nature by other corporations, maliciously, wickedly and for the purpose of injuring and destroying the said plaintiff's usefulness, maintained a blacklist against him; that he has suffered damages by loss of wages, and also damages of a permanent nature.

This action was filed under the provisions of Title 40, Secs. 172, 173, O.S.1951, which provides as follows:

"172. Blacklisting.—No firm, corporation or individual shall blacklist or require a letter of relinquishment, or publish, or cause to be pubished, or blacklisted, any employee, mechanic or laborer, discharged from or voluntarily leaving the service of such company, corporation or individual, with intent and for the purpose of preventing such employee, mechanic or laborer, from engaging in or securing similar or other employment from any other corporation, company or individual.

"173. Penalty.—Any person, firm or corporation violating the preceding section shall be fined in any sum not less than one-hundred dollars, nor more than five hundred dollars, and any person so blacklisted shall have a right of action to recover damages."

In support of the trial court's ruling, the defendants in error contend that the case at bar falls under the provisions of the Labor Management Act of 1947, 29 U.S.C. A. § 160(a) which statute provides:

"(a) Powers of Board generally. The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this Title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: Provided, That the Board is empowered by agreement with any agency or any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith."

It is stated by defendants in error in their brief that the acts complained of in petition of plaintiff, if true, would constitute an unfair labor practice under the Labor Management Act, and that the N. L. R. B. has exclusive jurisdiction. In support of this contention they have cited Garner v. Teamsters, Chauffeurs & Helpers Local Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, which was a case for injunctive relief. The Court there ruled that jurisdiction to remedy such conduct as a "matter of public interest" was vested exclusively in the N. L. R. B. Born v. Laube, 9 Cir., 213 F.2d 407. This was an action against a local labor union and its trustee for reinstatement of plaintiff as a member of the Union, compensation for his loss of earnings and exemplary damages.

Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546. In this case a labor union went on strike and picketed an employer's plant. The employer filed a charge of unfair labor practice with the N. L. R. B. Injunctive relief was also sought in Missouri State Courts. The Court held N. L. R. B. had exclusive jurisdiction in these cases, however, they deal with questions of equitable nature, and do not determine as between remedies provided by state statutes and N. L. R. B. and are not based upon action in tort. Therefore they are of very little help to us in determining the question presented here.

■ In the case of United Construction Workers, Affiliated with United Mine Workers v. Laburnum Construction Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025, the petitioners were contending there that the 1947 Act has occupied the labor relation field so completely that no regulatory agency other than the National Labor Relations Board, and no court may assert jurisdiction over unfair labor practices as defined by it, unless expressly authorized by Congress to do so. They claimed that state courts accordingly were excluded not only from enjoining future unfair labor practices and thus colliding with the Board, as occurred in Garner v. Teamsters, Chauffeurs & Helpers Local Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, but that state courts are excluded also from entertaining common-law tort actions for recovery of damages caused by such conduct. The court in this case said [347 U.S. 656, 74 S.Ct. 837]:

"In the Garner case Congress had provided a federal administrative remedy, supplemented by judicial procedure for its enforcement, with which the state injunctive procedure conflicted. Here Congress has neither pro-

vided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured respondent from this right of recovery will deprive it of its property without recourse or compensation. * * * We see no substantial reason for reaching such a result. The contrary view is consistent with the language of the Act and there is positive support for it in our decisions and in the legislative history of the Act."

The Laburnum case, supra, was followed in the recent cases of International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018, and International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (U.A.W.-C.I.O.) v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed. 2d 1030.

Congress in the passage of the National Labor Relation Act and the amendments thereto, has set up a comprehensive system of dealing with representation in collective bargaining and unfair labor practices on the part of both management and labor organizations. Its declared policy is that industrial strife which interferes with the flow of interstate commerce can be avoided or minimized if employees, employers and labor organizations each recognize the others' legitimate rights, and the purpose of the act and its amendments is to preserve the legitimate rights of employers and employees and to provide for orderly and peaceful procedure to achieve these goals. However, as Congress has not prescribed procedure for dealing with the consequences of tortious conduct, there is no ground for concluding that existing liabilities for tortious acts have been eliminated. The primarily private nature of claims for damages under state law may readily be distinguished from the public nature of the regulations of future labor relations under federal law.

The Labor Management Relations Act sets up no general compensatory procedure except in such minor supplementary ways as the reinstatment of wrongfully discharged employees with back pay. 61 Stat. 147, 29 U.S.C.A. § 160(c). See also National Labor Relations Board v. Local Union No. 1229, International Brotherhood of Electrical Workers, 346 U.S. 464, 74 S.Ct. 172, 98 L.Ed. 195.

In the Laburnum case, supra, the court further said:

"If Virginia is denied jurisdiction in this case, it will mean that where the federal preventive administrative procedures are impotent or inadequate, the offenders, by coercion of the type found here, may destroy property without liability for the damage done. * * *"

In Title 29, Section 187(b) as a part of 1947 Act, Congress prescribed judicial procedure for the recovery of damages caused by unfair labor practices resulting from secondary boycotts. In that instance the act expressly authorizes a recovery of damages in any Federal District Court and "in any other court having jurisdiction of the parties." By this provision the act assures uniformity, otherwise lacking, in rights of recovery in the state courts, and grants jurisdiction to the Federal Courts without respect to the amount in controversy. To recover damages under that section is consistent with the existence of juriction in state courts to enforce common-law liabilities generally. It would not be consistent to say that Congress, in this section, authorizes court action for the recovery of damages caused by tortious conduct related to secondary boycotts, and yet, without express mention of it, abol'shes all common-law rights to recover damages caused more directly by tortious acts, with remedies provided under state statutes, and not provided in the federal act.

The question of jurisdiction has been recently decided in several cases where remedies were provided by state statutes similar to those under the National Labor Relations Board, and the courts have consistently held that where the remedies provided under statute were not in conflict

with Federal Act and provided additional remedies, the state courts were vested with jurisdiction. Some of the more recent cases so holding are Sommer v. Metal Trades Council of Southern California, Cal.App., 234 P.2d 323; Algoma Plywood & Veneer Co. v. Wisconsin Employment Relation Board, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691.

We have found no provisions or suggestions in the National Labor Relations Act that would indicate that it was meant by Congress to provide exclusive jurisdiction over all actions which might in some manner involve labor relations.

 In view of the authorities cited hereinabove, we are of the opinion, and so hold, that the Labor Management Act of 1947 does not deprive state courts of jurisdiction over common-law tort actions, or actions provided by state statutes for damages resulting from unfair labor practices.

The judgment is therefore reversed and remanded with directions for trial court to proceed in accordance with the views expressed herein.

Reversed and remanded.